# COURT OF APPEALS
## DECISION
## DATED AND FILED

## June 11, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* Wis. Stat. § 808.10 and Rule 809.62.

Appeal No. **2023AP520**

Cir. Ct. No. 2018CV278

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

---

ALDEN ASSOCIATES,

   PLAINTIFF-COUNTER-DEFENDANT-APPELLANT-CROSS-RESPONDENT,

MARGE ALDEN,

   COUNTER-DEFENDANT-APPELLANT-CROSS-RESPONDENT,

   V.

JACKI CURRY,

   DEFENDANT-COUNTER-CLAIMANT-RESPONDENT-CROSS-APPELLANT,

MAJESTIC WELLNESS SPA,

   DEFENDANT,

MAJESTIC FALLS, INC.,

   COUNTER-CLAIMANT-RESPONDENT-CROSS-APPELLANT.

---

APPEAL and CROSS-APPEAL from an order of the circuit court for Polk County: DANIEL J. TOLAN, Judge. *Affirmed in part; reversed in part and cause remanded with directions.*

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Jacki Curry prevailed on her counterclaims filed in response to Marge Alden's suit to recover unpaid rent from Curry, and, pursuant to statutory fee-shifting provisions for two of those counterclaims, the circuit court awarded Curry $138,202.18 in attorneys' fees.[1] Alden and Curry appeal and cross-appeal, respectively, the court's award of attorneys' fees on several grounds. For the reasons that follow, we affirm the court's attorneys' fees award against Alden's challenges, but we reverse and remand for the court to consider Curry's fee request under the proper methodology.

## BACKGROUND

¶2 The facts underlying this case can be found in the parties' previous appeal: *Alden Associates v. Curry (Alden I)*, No. 2022AP1280, unpublished slip op. (WI App Dec. 19, 2023), *review denied* (WI May 21, 2024).[2] After a six-day bench trial, Curry was successful on seven of her eight counterclaims against

---

[1] For ease of reading, we will refer to all the parties in this case as either Alden or Curry.

[2] We cite this unpublished opinion simply for background information and the law of the case. *See* WIS. STAT. RULE 809.23(3) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

Alden for constructive eviction, unjust enrichment, civil theft, conversion, tortious interference with contractual and prospective contractual relationships, trademark infringement, and defamation. *Id.*, ¶1. She was unsuccessful on her eighth counterclaim, which alleged a violation of the landlord/tenant provisions of WIS. ADMIN. CODE ch. ATCP 134 (Oct. 2021)[3] and WIS. STAT. § 100.20. *Alden I*, No. 2022AP1280, ¶10. We affirmed the circuit court's judgment against Alden's appellate challenges. *Id.*, ¶1.

¶3 After the circuit court entered its judgment following the bench trial, Curry submitted her petition for legal fees and costs pursuant to the fee-shifting provisions of the civil theft statute, WIS. STAT. § 895.446(3)(b), and the trademark infringement statute, WIS. STAT. § 132.033(2)(d). Curry sought $317,357.54, for fees incurred by her attorneys, Timothy J. O'Brien and Carol N. Skinner, and non-taxable costs, arguing that all the fees and costs should be awarded because the claims share "a common core of facts" and are "interrelated." Alden opposed Curry's fee petition on several bases, including Skinner's alleged limited involvement in the case, WIS. STAT. § 814.045(2)(a)'s "3 times" presumption for attorneys' fees, and whether O'Brien's fees should be limited to only those incurred to prove the civil theft claim.

¶4 The circuit court held two nonevidentiary hearings on the fee issue. On September 30, 2022, the court heard the parties' arguments and discussed its thoughts but reserved ruling on the issue to allow some time to review the parties' submissions and arguments, including an analysis of the work each of Curry's attorneys performed during the trial. On January 27, 2023, the court issued its oral

---

[3] All references to WIS. ADMIN. CODE ch. ATCP 134 are to the October 2021 register.

ruling, awarding $50,489.80 for the work performed by O'Brien and $87,712.38 for the work performed by Skinner.

¶5     The circuit court arrived at these figures by applying what it called the lodestar method of valuation.  It then reduced that lodestar figure by forty-three percent in the case of O'Brien[4] and fifty percent in the case of Skinner, representing Curry's success on three of seven counterclaims pursued by O'Brien and four of eight counterclaims pursued by Skinner.  The court included more than just the two fee-shifting counterclaims in its calculation based on its finding that Curry's counterclaims for civil theft, unjust enrichment, and conversion "are interrelated and share a common core of facts and are not separate and distinct under the facts of this case."  It further reasoned that "[g]iven the convoluted nature of this case and the interrelated causes of action, there is no real way for [the] court to determine how much time was spent on each claim not only during the trial, but also outside of the trial."

¶6     The circuit court also examined each of the WIS. STAT. § 814.045(1) statutory factors on the record at both hearings.  For example, the court found that "[t]here is no doubt that this case was labor intensive from start to finish"; that "a lot of the extra hearings were due to the lack of cooperation from Alden"; that "trademark infringement is a specialized area of law" and "given the multiple causes of action, there is definitely skill that is required" of the attorneys; that "the physical number of days … that this case took up" would "[p]resumably … affect other opportunities for employment for both Skinner and O'Brien"; that affidavits

---

[4] The circuit court also reduced O'Brien's requested hourly rate from $375 per hour to $350 per hour because, as the court reasoned, "that's what the contract in the retainer agreement was."

in the record supported the hourly fees charged by the attorneys as well as their experience, reputation, and ability; that this case has been pending for a long time and, at that time, Curry's "relationships [with O'Brien and Skinner] are now over five years old"; and "that the case was complex in terms of the counterclaims." The court did not, however, address Curry's request for costs of investigation or non-taxable court costs. The court entered its written order granting attorneys' fees on February 8, 2023. Alden appeals, and Curry cross-appeals.

## DISCUSSION

¶7     The subject of both the appeal and the cross-appeal is the circuit court's award of attorneys' fees and costs. Curry's attorneys, as the ones submitting the fees, bear the burden of demonstrating the reasonableness of those fees. *See Kolupar v. Wilde Pontiac Cadillac, Inc.*, 2004 WI 112, ¶34, 275 Wis. 2d 1, 683 N.W.2d 58. Generally speaking, we defer to the circuit court in reviewing an award of attorney fees and costs, and we will not overturn its decision unless there was an erroneous exercise of discretion.[5] *See Hughes v. Chrysler Motors Corp.*, 197 Wis. 2d 973, 987-88, 542 N.W.2d 148 (1996). "A circuit court erroneously exercises its discretion when it fails to examine the relevant facts, applies the wrong legal standard, or does not employ a demonstrated rational process to reach a reasonable conclusion." *Borreson v. Yunto*, 2006 WI App 63, ¶6, 292 Wis. 2d 231, 713 N.W.2d 656. "[T]he exercise

---

[5] Alden uses the phrase "abuse of discretion" throughout her briefing. In 1992, our supreme court replaced that phrase with "erroneous exercise of discretion." *See, e.g.*, *Shirk v. Bowling, Inc.*, 2001 WI 36, ¶9 n.6, 242 Wis. 2d 153, 624 N.W.2d 375. In her reply brief, Alden acknowledges this fact, even citing *Shirk* for this proposition. Confusingly, however, she continues to use the incorrect phrase, even calling it "the more commonly phrased 'abuse of discretion' standard of review." We reiterate that, in Wisconsin, the phrase "erroneous exercise of discretion" has *replaced* any other previously used phrases.

5

of discretion is not the equivalent of unfettered decision-making"; "a discretionary determination must be the product of a rational mental process by which the facts of record and law relied upon are stated and are considered together for the purpose of achieving a reasoned and reasonable determination." *Hartung v. Hartung*, 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981).

## I. Alden's Appeal

### a. WIS. STAT. § 814.045(2)(a)

¶8      Alden challenges the circuit court's award of attorneys' fees to Curry on two bases. First, Alden argues that the court erred by failing to "acknowledge the statutory '3 times' presumption under" WIS. STAT. § 814.045(2)(a)[6] when it awarded Curry $37,712.38 in attorneys' fees for her trademark infringement claim under WIS. STAT. § 132.033. A circuit court considering a request for attorney fees under § 814.045 must consider numerous factors under subsec. (1) "in determining whether to award attorney fees and in

---

[6] WISCONSIN STAT. § 814.045(2) provides:

> (a) In any action in which compensatory damages are awarded, the court shall presume that reasonable attorney fees do not exceed 3 times the amount of the compensatory damages awarded but this presumption may be overcome if the court determines, after considering the factors set forth in sub. (1), that a greater amount is reasonable.

> (b) In any action in which compensatory damages are not awarded but injunctive or declaratory relief, rescission or modification, or specific performance is ordered, reasonable attorney fees shall be determined according to the factors set forth in sub. (1).

determining whether the attorney fees are reasonable."[7] Sec. 814.045(1). The presumption found in para. (2)(a) applies in cases where "compensatory damages are awarded," and the court must then "presume that reasonable attorney fees do not exceed 3 times the amount of compensatory damages awarded." Sec. 814.045(2)(a). However, "this presumption may be overcome if the court determines, after considering the factors set forth in sub. (1), that a greater amount is reasonable." *Id.*

¶9      According to Alden, the circuit court's "award of $100 in so-called nominal damages for [Curry's trademark infringement] claim must be construed … as an award of compensatory damages that triggers that presumption"—in other words, given the award of $100 in nominal damages, the reasonable attorneys' fees should not exceed $300. Thus, Alden asserts the court erred by concluding "that [WIS. STAT. § 814.045(2)(a)] did not apply because it awarded injunctive relief for Curry's statutory trademark infringement claim— thus implying that [§ 814.045(2)(b)] applied instead."

¶10     Curry counters that the circuit court awarded nominal damages, not compensatory damages, and the two are not the same under the law. Further,

---

[7] The WIS. STAT. § 814.045(1) factors include the following: (1) the time and labor required by the attorney; (2) the novelty and difficulty of the questions involved in the action; (3) the skill requisite to perform the legal service properly; (4) the likelihood that the acceptance of the particular case precluded other employment by the attorney; (5) the fee customarily charged in the locality for similar legal services; (6) the amount of damages involved in the action; (7) the results obtained in the action; (8) the time limitations imposed by the client or by the circumstances of the action; (9) the nature and length of the attorney's professional relationship with his or her client; (10) the experience, reputation, and ability of the attorney; (11) whether the fee is fixed or contingent; (12) the complexity of the case; (13) awards of costs and fees in similar cases; (14) the legitimacy or strength of any defenses or affirmative defenses asserted in the action; and (15) other factors the court deems important or necessary to consider under the circumstances of the case.

Curry argues that in a potential conflict between WIS. STAT. §§ 132.033 and 814.045, the specific statute controls over the general statute. But the parties disagree as to which statute is the general or specific statute. Curry advocates for § 132.033 as the more specific statute, arguing that para. (2)(b) of that section "specifically anticipates and recognizes" the result in this case because "Curry proved the injury but could not prove the corresponding monetary damages."[8] "Therefore," Curry claims, "the court did not have to award actual damages ('the court may award…') but could still recognize the violation of the right by enjoining Alden under [§ 132.033](2)(a), and by awarding the costs and legal fees under [§ 132.033](2)(d)."

---

[8] WIS. STAT. § 132.033(2) provides, in pertinent part:

> (a) If the person, association or union proves by a preponderance of the evidence that the defendant engaged in a violation of this section which threatens the person, association or union with irreparable injury, a court may grant an injunction to restrain such manufacture, use, display or sale and shall order that all such counterfeit marks in the possession or under the control of any defendant be delivered to the court to be destroyed.

> (b) Except as provided in par. (c), if the person, association or union proves injury and monetary damages by a preponderance of the evidence the court may award the person, association or union actual damages resulting from such manufacture, use, sale or display or an amount not to exceed 3 times the defendant's profits directly resulting from such wrongful manufacture, use, display or sale.

> ….

> (d) If the person, association or union proves a violation by a preponderance of the evidence, the court may award the costs of investigating the violation and of prosecuting the suit, including reasonable investigator and attorney fees.

¶11 We need not address the parties' arguments regarding this issue. Instead, for the purposes of this decision, we will assume, without deciding, that WIS. STAT. § 814.045(2)(a) applies. *See State v. Castillo*, 213 Wis. 2d 488, 492, 570 N.W.2d 44 (1997) ("An appellate court should decide cases on the narrowest possible grounds."). In doing so, we conclude that the circuit court considered the § 814.045(1) factors and implicitly determined that the statutory presumption in para. (2)(a) was overcome. The court, therefore, did not erroneously exercise its discretion.

¶12 The record clearly demonstrates that the circuit court considered Alden's argument under WIS. STAT. § 814.045(2)(a)'s language and rejected it. At both the September 22, 2022 and January 27, 2023 hearings, the court addressed in detail the § 814.045(1) factors that it considered in determining the attorneys' fees award. Further, the court

> considered that it was all the actions of Alden that led to the trademark infringement. She brought it upon herself and her company. Although the [c]ourt could not determine the amount of damages from the evidence, there is no doubt that Alden's trademark infringement damaged Curry which is one of the reasons [the court] granted the permanent injunction.

¶13 Contrary to Alden's argument that the circuit court's statement that Alden "brought it upon herself" "applies to nearly all defendants found liable for infringement," the court's *entire* discussion—including the § 814.045(1) factors—demonstrates that the court found the circumstances of this case weighed heavily in favor of awarding an amount greater than the presumptive $300 in attorneys' fees for trademark infringement. Thus, even if the presumption applied, Curry overcame it. The court's decision was not an erroneous exercise of discretion.

### b. Interrelated Claims

¶14 Alden's second argument is related to Curry's civil theft counterclaim under WIS. STAT. § 895.446. Section 895.446(3) contains a fee-shifting provision, stating that where a party prevails on his or her claim under that section, "he or she may recover" "[a]ll costs of investigation and litigation that were reasonably incurred, including the value of the time spent by any employee or agent of the victim." Sec. 895.446(3)(b); *see also* **Miller v. Storey**, 2017 WI 99, ¶49, 378 Wis. 2d 358, 903 N.W.2d 759 (concluding "that attorney fees are included within the meaning of 'costs of investigation and litigation' under [§] 895.446(3)(b)").

¶15 Alden argues that the circuit court erroneously included services rendered for the unjust enrichment and conversion claims, which are not fee-shifting claims, in its attorneys' fees award under WIS. STAT. § 895.446(3)(b). According to Alden, these claims are not so interrelated that separation would be impossible for the purpose of awarding statutorily authorized attorneys' fees. She further asserts that by combining these claims, the court improperly abrogated the American Rule that parties are presumptively responsible for their own attorney fees.

¶16 "Under the American Rule, the parties to a lawsuit bear the cost of their own attorney fees absent legislative authorization to shift costs." **Kolupar**, 275 Wis. 2d 1, ¶17. However, the legislature "has authorized courts to award costs and attorney fees to successful litigants in many contexts," including under WIS. STAT. § 895.446(3)(b). *See* **Kolupar**, 275 Wis. 2d 1, ¶17. In **Kolupar**, our supreme court adopted the "so-called 'lodestar'" method from the United States Supreme Court's decision in **Hensley v. Eckerhart**, 461 U.S. 424, 433 (1983), to

10

determine the reasonable amount of attorney fees to award under fee-shifting statutes. *Kolupar*, 275 Wis. 2d 1, ¶¶28-30. Under the lodestar method, "the circuit court must first multiply the reasonable hours expended by a reasonable rate" as a starting point to determine the amount of a reasonable fee, and the court "may then make adjustments" pursuant to the WIS. STAT. § 814.045(1) factors.[9] *See Anderson v. MSI Preferred Ins. Co.*, 2005 WI 62, ¶39, 281 Wis. 2d 66, 697 N.W.2d 73.

¶17 In this case, the circuit court stated that it was using the lodestar method to reach an initial determination of a reasonable fee and also discussed all the WIS. STAT. § 814.045(1) factors in its oral ruling. Our review of the court's robust discussion of those factors suggests that it found virtually all of the factors favored a full award of attorneys' fees to Curry.[10]

¶18 The circuit court, however, then applied what it called a "mathematical formula[,] dividing the number of claims by the … successful number of claims" to "allocate a percentage of the total time billed to the claims where the attorney's fees are available and the claims are interrelated." The court did so based on its conclusion that due to "the convoluted nature of this case and the interrelated causes of action, there is no real way for [it] to determine how much time was spent on each claim not only during the trial, but also outside of

---

[9] WISCONSIN STAT. § 814.045 was enacted in 2011 and altered the analysis for determining reasonable attorney fees. *See* 2011 Wis. Act 92, § 1. Prior to its enactment, the reasonableness of attorney fees was analyzed using the SCR 20:1.5(a) factors and relevant case law. *See Kolupar v. Wilde Pontiac Cadillac, Inc.*, 2004 WI 112, ¶¶23-30, 275 Wis. 2d 1, 683 N.W.2d 58.

[10] It does not appear that Alden is challenging the circuit court's findings as to the WIS. STAT. § 814.045(1) factors.

the trial." Both Alden and Curry challenge the court's use of this mathematical formula on appeal, but they do so for different reasons.[11]

¶19 Alden argues that while the circuit court had discretion to award attorneys' fees under WIS. STAT. §§ 895.446(3)(b) and 132.033(2)(d) for Curry's civil theft and trademark infringement claims, respectively, it was not permitted "to include other, non-statutory claims … and effectively increase the fees awarded." According to Alden, the unjust enrichment and conversion claims "are not sufficiently interrelated with Curry's statutory civil theft claim," and the final award of attorneys' fees should be reduced to represent only the services performed for Curry's civil theft claim.

¶20 The circuit court, however, specifically found that the civil theft, unjust enrichment, and conversion claims were "interrelated and share a common core of facts and are not separate and distinct under the facts of this case." The basis for its finding of a "common core of facts" comes from *Hensley*. In *Hensley*, the issue involved 42 U.S.C. § 1988 federal civil rights actions, which contain a fee-shifting provision for a prevailing party. *Hensley*, 461 U.S. at 426. The question before the court was whether "a partially prevailing plaintiff may recover an attorney's fee for legal services on unsuccessful claims." *Id.* The Court explained that where the claims for relief "involve a common core of facts or [are] based on related legal theories,"

> [m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the … court should focus on the significance of the overall

---

[11] We discuss Curry's challenge below. *See infra* ¶¶28-39.

> relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.
>
> Where a plaintiff has obtained excellent results, his [or her] attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.

*Id.* at 435.

¶21　We conclude that the circuit court did not erroneously exercise its discretion by awarding attorneys' fees for services rendered for the civil theft, unjust enrichment, and conversion claims based on its finding that the claims were "interrelated and share a common core of facts." As we outlined previously in *Alden I*, all of Curry's counterclaims derived from Alden's act of locking Curry out of the premises from which Curry operated a spa business and thereafter retaining Curry's property located on the premises and using that property to operate her own spa business under a very similar name.[12] *Alden I*, No. 2022AP1280, ¶¶1, 4-5, 9-10. The court found that Alden intentionally stole and converted Curry's property and that Alden was unjustly enriched because she did so. In other words, proof of one claim resulted in proof of the other claims.

---

[12] In some respects, we also previously addressed this issue in *Alden I*, when we affirmed the circuit court's judgment against Alden's claim that the court "erroneously analyzed three of Curry's counterclaims related to personal property—unjust enrichment, conversion, and civil theft—under identical facts without acknowledging that WIS. STAT. § 895.446 required Curry to prove that Alden had the 'specific criminal intent' to steal her personal property." *Alden Associates v. Curry (Alden I)*, No. 2022AP1280, unpublished slip op. ¶¶9, 13, 16-17 (WI App Dec. 19, 2023), *review denied* (WI May 21, 2024). As the court noted in its oral decision on fees, the court "combined" the damages for unjust enrichment, civil theft, and conversion because "while all three causes of actions have different elements, all of which were proven over the course of the six day trial[,] [t]hey emanate from the same common core of facts, and [the court] fully addressed those … when [it] rendered [its trial] decision."

Therefore, the fees incurred for proving the fee-shifting claim for civil theft were also incurred for proving the other two claims.

¶22 Further, the circuit court determined that "[g]iven the multiple overlaps in the testimony" and "the numbers of hours spent on the case by Attorney O'Brien and Attorney Skinner," "it would be nearly impossible for [the court] to dissect what time in both Skinner and O'Brien's time sheets [was] attributable to the claims," which "compounds the difficulty in making any independent analysis of the time spent on each cause of action where reasonable attorney fees were available." *See **Hensley***, 461 U.S. at 435. The court's findings are supported by the record.

¶23 Alden's arguments that the circuit court erred by determining that the three counterclaims shared a common core of facts are not persuasive. In general, she asserts that the court's decision improperly abrogates the American Rule. According to Alden, the American Rule "must be 'strictly adhered to,'" *see **DeChant v. Monarch Life Ins. Co.***, 200 Wis. 2d 559, 571, 547 N.W.2d 592 (1996), and "noticeably absent" from WIS. STAT. § 895.446(3)(b) "is any reference to the costs of related claims." She also faults Curry's arguments for failing to consider the American Rule in drawing a line for awarding fees when at least one claim is a fee-shifting claim.

¶24 For several reasons, we conclude that the American Rule does not prevent Curry from recovering attorneys' fees under the facts of this case, given the fee-shifting statutes at issue. *See **DeChant***, 200 Wis. 2d at 571 ("[P]arties to litigation are generally responsible for their own attorney's fees *unless recovery is expressly allowed by either contract or statute* …." (emphasis added)). First, Alden has not cited any legal authority, aside from general case law defining the

American Rule, to support her assertion that the circuit court's conclusion in this case, based on ***Hensley***'s reasoning, runs afoul of the American Rule. Second, we stress that the court's conclusion that the counterclaims shared a common core of facts did not authorize "the costs of related claims" to be paid under WIS. STAT. § 895.446(3)(b). Instead, it recognized that the "costs of investigation and litigation" of the civil theft counterclaim would have necessarily subsumed the unjust enrichment and conversion counterclaims because of the interrelation of the issues.

¶25 Third, as to Alden's claim that there is no "line" drawn for awarding fees in a case where there are multiple claims and only one is properly considered under a fee-shifting statute, we disagree. Alden faults the circuit court for failing to "analyz[e] potential interrelation between claims through [the] fundamental [American R]ule, a process that requires rational line drawing," but she fails to specify where she believes the line should be.[13] *See **State v. Pettit***, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (we need not address undeveloped arguments). We conclude that to the extent a "line" is necessary, it is determined by the court's finding that the claims are or are not interrelated or do or do not involve a common core of facts. Just as the court is called on to determine the reasonable amount of hours expended and a reasonable rate to determine a reasonable fee, it is well within the purview of the court to determine, subject to an

---

[13] We can only assume, based on her arguments, that Alden believes the line should be legal work related to only the fee-shifting-statute claim, absent an analysis of a common core of facts, because she asserts that "the circuit court should have instead awarded fees for legal work that Curry's attorneys performed solely on her statutory civil theft claim." However, she appears to acknowledge the analysis of interrelated claims in her reply brief, stating that "the American Rule forbids awarding attorneys' fees unless there is an underlying statutory basis *or sufficient interrelation between claims where one has that underlying basis*." (Emphasis added.)

15

erroneous exercise of discretion standard, whether claims involve a common core of facts.

¶26    Next, Alden argues that unjust enrichment and conversion are not sufficiently related to civil theft because that claim requires proof of specific criminal intent, while conversion and unjust enrichment do not require this element. Alden details the elements of each of those claims and concludes that each one "involves its own distinct elements" as well as "drastically different arguments and factual underpinnings that require distinct legal work for success." Alden admits that the counterclaims "involve the same parties, the same location, and the same general timeline," but she argues "if that were enough, then, in almost every case, attorneys' fees would apply to all claims where at least one claim provides fee shifting. That cannot be the law."

¶27    We disagree with Alden's argument to the extent that she engages in an elements-only analysis of each counterclaim. The *Hensley* Court identified cases with "a common core of facts" or those cases with "related legal theories," but the Court did not specifically require that the claims have common elements. *See Hensley*, 461 U.S. at 435. Thus, the *Hensley* approach is not strictly an elements-only analysis. Additionally, Alden has not presented any legal authority where a court applied the *Hensley* approach to different types of claims and utilized an elements-only analysis. While elementally, we agree that Curry's civil theft, unjust enrichment, and conversion counterclaims are somewhat different, the facts giving rise to the counterclaims are the same in more than just the parties, the location, and the timeline. In other words, as the circuit court recognized in its trial decision, Curry's proof of the facts establishing civil theft also established that conversion occurred and that Alden was unjustly enriched by her wrongful actions. Alden fails to show that the court's determination—i.e., that the

counterclaims shared a common core of facts and were interrelated—was an erroneous exercise of discretion, and we conclude that the court's ruling finds support in the record.

## II. Curry's Cross-Appeal

### a. Mathematical Formula

¶28 Curry's cross-appeal also challenges the circuit court's calculation of the fee award. She argues that given the court's findings, the court's use of the mathematical formula to reduce the attorneys' fees in this case was an erroneous exercise of discretion. Curry claims that under *Hensley*, the court should have found that all of her successful counterclaims shared a common core of facts and, therefore, that "all fees should be awarded which were expended in pursuit of the ultimate result achieved."

¶29 In contrast, Alden argues that the circuit court's application of the mathematical formula was proper. In general, Alden claims that "Curry's argument that *every* claim is interrelated finds no support in law"; thus, Alden contends that the court applied "a proper mathematical formula" to reduce Curry's attorneys' fees award in this case, notwithstanding Alden's arguments against the award noted above. (Formatting altered.) *See supra* ¶¶14-27. Further, Alden faults Curry for "focus[ing] on various fee awards [cases] from other jurisdictions" because those cases "cannot justify reversing the circuit court's application of the factors under Wis. Stat. § 814.045(1), with its corresponding mathematical formula applying those factors to relevant claims."

¶30 We agree that the circuit court erred by applying a so-called "mathematical formula" to its lodestar analysis. After finding that most of the Wis. Stat. § 814.045(1) factors supported a fee award, the court failed to use

those factors to adjust the lodestar figure up or down. Instead, the court applied a "mathematical formula" to reduce the lodestar figure by the number of claims—sometimes referred to as a "mechanical claim-chopping approach"—which was rejected in **Hensley**. *See **Lenard v. Argento***, 808 F.2d 1242, 1245 (7th Cir. 1987); **Hensley**, 461 U.S. at 436 n.11; *cf.* **Johnson v. Roma II-Waterford LLC**, 2013 WI App 38, ¶26, 346 Wis. 2d 612, 829 N.W.2d 538 ("The record ought to assure us that the [trial-level] court did not 'eyeball' the fee request and 'cut it down by an arbitrary percentage because it seemed excessive to the court.'" (alteration in original; citation omitted)). Utilizing a mathematical formula to divide a fee award is not the appropriate analysis under **Hensley**, as adopted by our supreme court in **Kolupar** and its progeny, to determine whether the number of hours expended by counsel was reasonable and, if not, what number of hours would be reasonable.

¶31 It appears from our review of the record that the circuit court believed that it was required to reduce Curry's attorneys' fees award using the mathematical formula because some of the counterclaims were not brought under fee-shifting statutes. Thus, the court's error stems from its determination that only the civil theft, unjust enrichment, and conversion counterclaims were "interrelated and share a common core of facts and are not separate and distinct under the facts of this case." Essentially, the court's conclusion that some counterclaims shared a common core of facts did not go far enough.

¶32     We conclude that all of Curry's seven successful counterclaims shared a common core of facts.[14]    We previously affirmed the circuit court's finding that Alden engaged in willful conduct with criminal intent in the actions she took in this case that went beyond an "eviction gone wrong," *see Alden I*, No. 2022AP1280, ¶¶13, 17, 36-47, and we agree with Curry's assessment in this appeal that "virtually all of the work in this case was necessitated by Alden's wrongful actions in her attempt to steal Curry's business."    In other words, counsels' work on any one of Curry's counterclaims was not unrelated to counsels' work on another claim because the facts that Curry was required to prove to establish one counterclaim either established an element of another counterclaim or at least provided support or background for the same.    As a result, Curry would have incurred these attorneys' fees even if she had brought only the two fee-shifting counterclaims, rather than all of her successful counterclaims, because counsel would still have had to, for example, file and serve her answer and counterclaims; file her amended answers; appear at the numerous pretrial or motion hearings due in part to, as the court explained, "the lack of cooperation from Alden"; orally argue the motions; engage in discovery; conduct research; and prepare for and participate in the trial.

¶33     Accordingly, the factual basis and evidence for all the counterclaims and defenses asserted by Curry were intertwined in such a way that it was not possible to itemize time spent on only certain causes of action.    Therefore, the

---

[14] Curry concedes that "[i]n the instant case, the only claim which was distinct in all respects from the seven counterclaims upon which Curry prevailed was the eighth counterclaim," which asserted a violation of WIS. ADMIN. CODE ch. ATCP 134 and "for which an extremely small amount of time was spent by Attorney O'Brien, essentially work related to drafting the pleading.  It is also the only counterclaim on which Curry didn't prevail in this lawsuit."

19

hours reported by Curry's attorneys were "devoted generally to the litigation as a whole." *See Hensley*, 461 U.S. at 435. Importantly, the circuit court did not find that its inability to identify the legal work expended for each claim was the result of counsels' sloppy or imprecise time submissions. Further, the court stated that it could "absolutely" "understand the hours that were put into this case as contained in the time sheets produced by the attorneys[.]"

¶34    As addressed above, where a party's claims "arise out of a common core of facts," a "losing party is not entitled to a reduction in attorney's fees for time spent on unsuccessful claims, if the winning party achieved substantial success and the unsuccessful claims were brought and pursued in good faith." *Radford v. J.J.B. Enters., Ltd.*, 163 Wis. 2d 534, 550, 472 N.W.2d 790 (Ct. App. 1991); *Hensley*, 461 U.S. at 435-36. It seems reasonable, then, to this court that a losing party—Alden—is similarly not entitled to a reduction in Curry's attorneys' fees for time spent on successful claims which were not subject to a fee-shifting statute, provided the time spent on those claims was necessitated by fee-shifting claims.

¶35    For example, as the Seventh Circuit Court of Appeals explained, "For tactical reasons and out of caution lawyers often try to state their client's claim in a number of different ways," but the client is not "penalized just because some, or even all but one, are rejected, provided that the one or ones that succeed give him [or her] all that he [or she] reasonably could have asked for." *Lenard*, 808 F.2d at 1245-46; *see also Hensley*, 461 U.S. at 448 (Brennan, J., concurring in part; dissenting in part) ("Courts should recognize that reasonable counsel in a civil rights case, as in much litigation, must often advance a number of related legal claims in order to give plaintiffs the best possible chance of obtaining significant relief."). Similarly, Curry's attorneys should not be penalized because

20

she brought—and was able to prove—additional counterclaims based on facts she otherwise would have had to establish to meet her burden on the fee-shifting claims.

¶36 In response, Alden challenges the application of ***Hensley***, as well as other federal civil rights decisions cited by Curry, to the circumstances of this case. According to Alden, "the fee-shifting provided for by [42 U.S.C.] § 1988 is allowable because such litigation serves a greater purpose than that of a private dispute," but "[t]here is no compelling reason why the [circuit] court here should have cited ***Hensley***, or any other federal civil rights case." Alden claims that "the concept of 'interrelatedness' in civil rights cases, where *all* claims are subject to fee-shifting, simply is not automatically transferable to cases such as this where the majority of claims are not subject to *any* fee-shifting statute."

¶37 We disagree that the holding in ***Hensley*** is inapplicable. Our supreme court expressly adopted ***Hensley***'s lodestar methodology and directed the circuit courts to follow its logic when explaining how a fee award has been determined. *See **Kolupar***, 275 Wis. 2d 1, ¶30.[15] By that token, other federal cases applying or explaining the lodestar methodology can provide persuasive authority for this court. *See **Lynch v. Crossroads Counseling Ctr., Inc.***, 2004 WI App 114, ¶39, 275 Wis. 2d 171, 684 N.W.2d 141. Further, courts in this jurisdiction have applied ***Hensley***'s reasoning in various fee-shifting cases where Wisconsin statutes are at issue. *See **Lynch***, 275 Wis. 2d 171, ¶39 (collecting cases).

---

[15] We also note that ***Kolupar*** involved a fee-shifting statute providing recovery for pecuniary loss for retail buyers of motor vehicles and, thus, was not a case enforcing civil rights. *See **Kolupar***, 275 Wis. 2d 1, ¶18.

¶38    As to whether "the concept of 'interrelatedness' in civil rights cases" is transferable to this case, we agree with Curry that the public policy purposes for fee-shifting provisions remain the same whether civil rights, civil theft, or trademark infringement is at issue.  For example, our supreme court has held that "an important purpose of fee-shifting statutes is to encourage injured parties to enforce their statutory rights when the cost of litigation, absent the fee-shifting provision, would discourage them from doing so," "even when the costs of litigation exceed the value of the action."  *Kolupar v. Wilde Pontiac Cadillac, Inc.*, 2007 WI 98, ¶55, 303 Wis. 2d 258, 735 N.W.2d 93.   Other goals of fee-shifting provisions are to make the victim whole, *see Standard Theatres, Inc. v. DOT*, 118 Wis. 2d 730, 744-45, 349 N.W.2d 661 (1984); *Johnson*, 346 Wis. 2d 612, ¶32, and to attract competent counsel to represent individuals in these cases, *see Lynch*, 275 Wis. 2d 171, ¶45; *Betz v. Diamond Jim's Auto Sales*, 2014 WI 66, ¶26, 355 Wis. 2d 301, 849 N.W.2d 292.

¶39    In consideration of these public policy objectives, *Hensley* recognized that attorneys should be compensated for all time reasonably expended on a matter.  Alden provides no legal authority stating that the *Hensley* "concept of interrelatedness" does not apply under the circumstances presented here, and we see no reason to diverge from its instruction when to do so would defeat the purposes of the fee-shifting statutes at issue.

*b. O'Brien's Hourly Rate*

¶40    Curry next challenges the circuit court's reduction of O'Brien's hourly rate from $375 per hour to $350 per hour.  She asserts that "well-settled law regarding fee-shifting calculations does not support the [circuit] court's reduction of … O'Brien's hourly rate to $350, based on a fee agreement entered

into years before trial." Instead, Curry claims that "compensation for attorneys in fee[-]shifting cases should be based on current rates, to compensate for the delay in payment."

¶41 In the fee agreement that Curry originally signed with O'Brien's firm on December 11, 2017, the hourly rate set for representation—with a different attorney—was $350 per hour. During the circuit court's oral ruling, it explained that it "reduced O'Brien's hourly rate to $350 because that's what the contract in the retainer agreement was. WISCONSIN STAT. § 814.045(3) says this section does not abrogate the rights of persons to enter into an agreement for attorney's fees. And the [c]ourt shall presume that such an agreement is reasonable." As Curry argues, however, the fee agreement also provided: "We may make reasonable adjustments to these rates once each year." Accordingly, Curry submitted O'Brien's affidavit explaining that his billing rate increased to $375 per hour on October 1, 2019. Further, Curry also submitted affidavits from other attorneys practicing in the area who opined that O'Brien's rate of $375 per hour was reasonable.

¶42 We conclude that the circuit court erroneously exercised its discretion by failing to explain its reason for reducing O'Brien's hourly fee, beyond stating that $350 was established as his hourly rate in the fee agreement. The lodestar method instructs the court to determine a reasonable hourly rate. *See Hensley*, 461 U.S. at 433. A reasonable hourly rate is the prevailing market rate for an attorney with a similar skill level and experience who is providing similar services in the same community. *See Crawford County v. Masel*, 2000 WI App 172, ¶8, 238 Wis. 2d 380, 617 N.W.2d 188; *see also* WIS. STAT. § 814.045(1)(e) (instructing courts to consider "[t]he fee customarily charged in the locality for similar legal services"). The Supreme Court has also suggested

that compensation for attorneys in fee-shifting cases be based on current rates due to a delay in payment. *Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989) ("[A]n appropriate adjustment for delay in payment—whether by the application of current rather than historic hourly rates or otherwise—is within the contemplation of [42 U.S.C. § 1988].").

¶43    In this case, Curry—as the party with the burden—submitted evidence to the circuit court that the fee agreement with the $350 billing rate was signed in 2017; the fee agreement provided for that billing rate to be adjusted once per year; O'Brien's billing rate increased to $375 in October 2019; and a $375 hourly rate was consistent with the current market rate for comparably skilled and experienced attorneys. It does not appear that Alden submitted contrary evidence on this issue. Although the court cited WIS. STAT. § 814.045(3) for the proposition that the billing rate in a fee agreement is presumptively reasonable, nothing in § 814.045(3) *requires* a court to accept that rate, especially when a party is arguing that a higher rate is appropriate.

¶44    We acknowledge that when the circuit court fails to explain its reasoning, "we may search the record to determine if it supports the court's discretionary decision." *Randall v. Randall*, 2000 WI App 98, ¶7, 235 Wis. 2d 1, 612 N.W.2d 737. We nevertheless find no discussion in the court's oral ruling from which we can confidently ascertain why it determined that Curry failed to meet her burden to show the reasonableness of O'Brien's $375 billing rate or why it determined that a lower fee was reasonable under the circumstances of the case. Given that we are remanding on a separate basis, we also remand with instructions

to the court to explain its reasoning for applying the $350 billing rate to all of O'Brien's time submissions.[16]

### c. Non-taxable Costs

¶45 Finally, Curry argues that the circuit court erred by failing to award her "non-taxable costs in the total amount of $3,905.45." She claims that her request for non-taxable costs was "essentially unopposed," apart from Alden's objection to a $275 federal trademark filing fee. Thus, Curry asserts that the court "simply forgot to address [her] request for non-taxable costs, as it did not address this issue at all."

¶46 Alden, in contrast, argues that this issue is "not appealable" because "[a]s it stands, there is no 'final judgment' or 'final order' on this issue that could provide the [circuit] [c]ourt jurisdiction." According to Alden, "[i]f Curry believes [the court forgot to address non-taxable costs], she should advise the circuit court so that it may render a decision related to non-taxable costs."

¶47 We disagree that we lack jurisdiction to address this issue. The circuit court's order on Curry's petition for attorneys' fees and costs was a final order for purposes of appeal. Curry requested non-taxable costs in her petition, but the court did not consider those costs in response to Curry's request. Therefore, they were denied. The court did not, however, exercise its discretion

---

[16] Curry also claims that O'Brien's fees were further improperly reduced because the circuit court "assum[ed] incorrectly that … O'Brien had not worked on the trademark claim, only the" civil theft, unjust enrichment, and conversion counterclaims. She argues that "O'Brien handled the testimony of several witnesses regarding trademark infringement" and that "Alden admit[ted] this in her summary of testimony requested by the court." This issue should also be addressed by the court on remand.

by denying Curry's request for non-taxable costs. Accordingly, we also remand for the court to consider this issue and to explain its reasoning.

## CONCLUSION

¶48    In conclusion, the circuit court erred in this case by applying a "mathematical formula" to the lodestar figure rather than adjusting that figure based on the WIS. STAT. § 814.045(1) factors. The court's "mathematical formula" also failed to account for the fact that all of Curry's successful counterclaims were interrelated and based on a common core of facts such that the counterclaims could not be viewed as discrete claims. We further conclude that the court erroneously exercised its discretion by failing to explain its decision to award O'Brien's fees at $350 per hour and to address Curry's request for non-taxable costs. Accordingly, we reverse the court's order awarding attorneys' fees in part and remand the matter for the court to apply the correct legal standard and to provide an adequate explanation for its decision.

¶49    No costs are awarded to any party.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.